No. 22-2176
Criminal

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff and Appellee,

vs.

KIMO LITTLE BIRD, SR.,

Defendant and Appellant.

_____

Appeal from the United States District Court
For the District of South Dakota
Northern Division

The Honorable United States District Judge Charles B. Kornmann

_____

**APPELLEE'S BRIEF**

ALISON J. RAMSDELL
UNITED STATES ATTORNEY
Jay Miller
Assistant U.S. Attorney
P.O. Box 7240
Pierre, SD 57501
Telephone: (605) 224-5402
Attorneys for Appellee.

## SUMMARY AND STATEMENT REGARDING ORAL ARGUMENT

Following a jury trial, Kimo Little Bird, Sr. (Little Bird) was convicted and sentenced to life plus 10 years in prison for one count of Aggravated Sexual Abuse of a Child, Felony Sex Offense Against a Minor While Required to Register as a Sex Offender, and Tampering With a Witness.

On appeal, Little Bird contends that the evidence was insufficient to convict him of Aggravated Sexual Abuse of a Child and Witness Tampering. He also alleges that the sentence imposed by the district court was substantively unreasonable.

The Government opposes each of Little Bird's arguments. A reasonable jury believed the detailed testimony of S.I.R., as well as Little Bird's mother and sister. Recordings of jail phone calls were played for the jury. The district court did not abuse its discretion in sentencing Little Bird to life in prison. The sentence was within the statutory limits and the appropriate Sentencing Guidelines range.

The Government submits the facts and legal arguments are adequately presented in the briefs and record, and that the decisional process would not be significantly aided by oral arguments.

i

# TABLE OF CONTENTS

SUMMARY AND STATEMENT REGARDING ORAL ARGUMENT ................i

TABLE OF AUTHORITIES ...................................................................iv

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF ISSUES ....................................................................1

I.    WHETHER THE DISTRICT COURT ERRED IN DENYING
      LITTLE BIRD'S MOTION FOR JUDGMENT OF ACQUITTAL FOR
      INSUFFICIENT EVIDENCE FOR AGGRAVATED SEXUAL
      ABUSE OF A CHILD ...................................................................1

II.   WHETHER THE DISTRICT COURT ERRED IN DENYING
      LITTLE BIRD'S MOTION FOR JUDGMENT OF ACQUITTAL FOR
      INSUFFICIENT EVIDENCE FOR TAMPERING WITH A
      WITNESS ....................................................................................2

III.  WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION
      BY IMPOSING A WITHIN-GUIDELINES-RANGE SENTENCE OF
      LIFE IMPRISONMENT ...............................................................2

STATEMENT OF THE CASE...............................................................2

      A.    Procedural History................................................................2

      B.    Statement of Factual Background ........................................4

            1.    Evidence Regarding Little Bird's Abuse of S.I.R. .......4
            2.    Evidence Regarding Little Bird's Abuse of S.S.W. ...................10
            3.    Evidence Regarding Little Bird's Prior Sex Offense Conviction
                  ...............................................................................14
            4.    Evidence Regarding Little Bird's Tampering With a Witness ...15

      C.    Motions for Judgment of Acquittal and Verdict....................21

      D.    Post-Trial Motion for Judgment of Acquittal .......................22

      E.    Sentencing............................................................................23

SUMMARY OF THE ARGUMENT ........................................................28

ii

ARGUMENT ...............................................................................................29

I.    THE DISTRICT COURT DID NOT ERR IN DENYING LITTLE BIRD'S MOTION FOR JUDGMENT OF ACQUITTAL FOR INSUFFICIENT EVIDENCE FOR AGGRAVATED SEXUAL ABUSE OF A CHILD ..........................................................................29

    A.    Standard of Review .......................................................................29

    B.    The Evidence to Support the Aggravated Sexual Abuse of a Child Conviction Was Sufficient ..............................................30

II.    THE DISTRICT COURT DID NOT ERR IN DENYING LITTLE BIRD'S MOTION FOR JUDGMENT OF ACQUITTAL FOR INSUFFICIENT EVIDENCE FOR TAMPERING WITH A WITNESS ......................................................................................34

    A.    Standard of Review .......................................................................34

    B.    The Evidence to Support the Tampering With a Witness Conviction Was Sufficient ..............................................................35

III.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY SENTENCING LITTLE BIRD TO A WITHIN-THE-GUIDELINES-RANGE SENTENCE OF LIFE IMPRISONMENT ...................................37

    A.    Standard of Review .......................................................................37

    B.    Little Bird's Sentence is Procedurally Sound and Substantively Reasonable ....................................................................................38

        1.    The District Court Did Not Commit a Procedural Error ..........38
        2.    The U.S.S.G. § 3C1.1 Enhancement Was Properly Applied....39
        3.    The District Court's Imposition of a Life Sentence Was Substantively Reasonable .......................................................41

CONCLUSION ...........................................................................................44

CERTIFICATE OF COMPLIANCE ............................................................45

CERTIFICATE OF SERVICE ......................................................................46

iii

# TABLE OF AUTHORITIES

**CASES:**                                                                 **PAGE:**

*Gall v. United States*, 552 U.S. 38 (2007) ...................................................37, 41, 42

*Rita v. United States*, 551 U.S. 338 (2007)...........................................................41

*United States v. Ali*, 616 F.3d at 755 (8th Cir. 2010) .............................................35

*United States v. Bates*, 584 F.3d 1105 (8th Cir. 2009) ...........................................38

*United States v. Beaman*, 361 F.3d 1061 (8th Cir. 2004).......................................31

*United States v. Belfrey*, 928 F.3d 746 (8th Cir. 2019) ...........................................38

*United States v. Brisbin*, 659 F. App'x. 903 (8th Cir. 2016)....................................39

*United States v. Burns*, 577 F.3d 887 (8th Cir. 2009) (en banc) ............................42

*United States v. Chavez*, 230 F.3d 1089 (8th Cir. 2000) .........................................35

*United States v. Colton*, 742 F.3d 345 (8th Cir. 2014) ...........................2, 30, 34, 35

*United States v. Cunningham*, 593 F.3d 726 (8th Cir. 2010) ..................................39

*United States v. DeCoteau*, 630 F.3d 1091 (8th Cir. 2011)....................................31

*United States v. Eagle*, 133 F.3d 608 (8th Cir. 1998)..............................................30

*United States v. Feemster*, 572 F.3d 455 (8th Cir. 2009) (en banc)............38, 41, 42

*United States v. Gardellini*, 545 F.3d 1089 (D.C. Cir. 2008).................................42

*United States v. Hamilton*, 332 F.3d 1144 (8th Cir. 2003).....................................30

*United States v. Hemsher*, 893 F3d. 525 (8th Cir. 2018)........................................37

*United States v. Gabe*, 237 F.2d 954 (8th Cir. 2001) .............................................30

Appellate Case: 22-2176     Page: 5     Date Filed: 10/20/2022 Entry ID: 5209811

*United States v. Garcia*, 946 F.3d 413 (8th Cir. 2019)........................................2, 41

*United States v. Gaye*, 902 F.3d 780 (8th Cir. 2018)............................................2, 37

*United States v. Gypsum Co.,* 333 U.S. 364 (1948)...................................................39

*United States v. Jillings*, 156 F.3d 857 (8th Cir. 1998) ............................................30

*United States v. Kelly*, 436 F.3d 992 (8th Cir. 2006).....................................1, 29, 34

*United States v. Kenyon*, 397 F.3d 1071 (8th Cir. 2005).........................................31

*United States v. King*, 898 F.3d 797 (8th Cir. 2018) .............................................30 34

*United States v. Kirkie*, 261 F.3d 761 (8th Cir. 2001) .............................................31

*United States v. McNeil*, 184 F.3d 770 (8th Cir. 1999) .......................................1, 31

*United States v. Pate*, 518 F.3d 972 (8th Cir. 2008)..................................................38

*United States v. Seibel*, 712 F.3d 1229 (8th Cir. 2013) ...........................................31

*United States v. Smart*, 501 F.3d 862 (8th Cir. 2007) ........................................38, 39

*United States v. Smith*, 665 F.3d 951 (8th Cir. 2011)...............................................40

*United States v. St. Claire*, 831 F.3d 1039 (8th Cir. 2016).......................................41

*United States v. Surratt*, 172 F.3d 559 (8th Cir. 1999).......................................30, 34

*United States v. Vaca*, 289 F.3d 1046 (8th Cir. 2002)......................................2, 38, 40

*United States v. Walker*, 917 F.3d 1004 (8th Cir. 2019) .....................................29, 34

*United States v. Wanna*, 744 F.3d 584 (8th Cir. 2014)........................................2, 35

*United States v. White Bull*, 646 F.3d 1082 (8th Cir. 2011) ....................................31

*United States v. Wiest*, 596 F.3d 906 (8th Cir. 2010) ..............................................35

Appellate Case: 22-2176    Page: 6    Date Filed: 10/20/2022 Entry ID: 5209811

*United States v. Williams*, 890 F.2d 102 (8th Cir. 1989)..........................................39

*United States v. Willis*, 89 F.3d 1371 (8th Cir. 1996)...................................2, 30, 34

*United States v. Woodard*, 675 F.3d 1147 (8th Cir. 2012) ......................................41

*United States v. Wright*, 119 F.3d 630 (8th Cir. 1997).......................................1, 31

*United States v. Ziesman*, 409 F.3d 941 (8th Cir. 2005) .........................................31

## **STATUTES:**

18 U.S.C. § 1151 .................................................................................................4

18 U.S.C. § 1153 ............................................................................................1, 2

18 U.S.C. § 1512(b)(1)...................................................................................1, 3

18 U.S.C. § 1512(i) ........................................................................................1, 3

18 U.S.C. § 2241(c) .......................................................................................1, 2

18 U.S.C. § 2242(2) .......................................................................................1, 2

18 U.S.C. § 2246(2) .......................................................................................1, 2

18 U.S.C. § 2260A ..........................................................................................1, 2

18 U.S.C. § 3231 .................................................................................................1

18 U.S.C. § 3553(a) ...................................................................29, 41, 42, 43

28 U.S.C. § 1291 .................................................................................................1

28 U.S.C. § 3742.................................................................................................1

Appellate Case: 22-2176    Page: 7    Date Filed: 10/20/2022 Entry ID: 5209811

**MISCELLANEOUS:**

U.S.S.G. § 2A3.1(a)(1) ............................................................24

U.S.S.G. § 3C1.1 ...................................................24, 38, 39, 40

U.S.S.G. § 3D1.2(c) ..............................................................24

U.S.S.G. § 4A1.1(d) ..............................................................24

U.S.S.G. § 4B1.1 ...................................................................24

U.S.S.G. § 4B1.5(a)(1)(A) or (B) ........................................24

Appellate Case: 22-2176    Page: 8    Date Filed: 10/20/2022 Entry ID: 5209811

# JURISDICTIONAL STATEMENT

Kimo Little Bird appeals the final judgment of the district court in a criminal case. The Superseding Indictment alleged violations of 18 U.S.C. §§ 1153, 1512(b)(1), 1512(i), 2241(c), 2242(2), 2246(2), and 2260A. The district court had jurisdiction pursuant to 18 U.S.C. §§ 3231 and 1153. The district court sentenced Little Bird on May 23, 2022, and entered final judgment on May 27, 2022. R. Doc. 106-07.[1] Little Bird filed a timely notice of appeal on June 3, 2022. R. Doc. 108. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1291 and 3742.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.  **WHETHER THE DISTRICT COURT ERRED IN DENYING LITTLE BIRD'S MOTION FOR JUDGMENT OF ACQUITTAL FOR INSUFFICIENT EVIDENCE FOR AGGRAVATED SEXUAL ABUSE OF A CHILD.**

*United States v. Kelly*, 436 F.3d 992 (8th Cir. 2006)
*United States v. Wright*, 119 F.3d 630 (8th Cir. 1997)
*United States v. McNeil*, 184 F.3d 770 (8th Cir. 1999)

---

[1] References to the record will be as follows: The district court record will be denoted by the letters "R. Doc." followed by the appropriate docket number and relevant page number. References to Little Bird's Appellant brief will be denoted by the letters "AB," followed by the appropriate page number. The transcript from the pretrial conference will be referred to as "PTT," followed by the relevant page numbers. The jury trial transcript will be cited as "TT," followed by the relevant page numbers. The jury trial transcript is in two volumes, but the pages are numbered sequentially from one transcript to the next. Admitted trial exhibits will be referred to as "Tr. Exh." followed by the relevant exhibit. A CD of the jail phone calls will be provided to the court. The sentencing transcript will be cited as "ST," followed by the relevant page numbers.

1

## II. WHETHER THE DISTRICT COURT ERRED IN DENYING LITTLE BIRD'S MOTION FOR JUDGMENT OF ACQUITTAL FOR INSUFFICIENT EVIDENCE FOR TAMPERING WITH A WITNESS.

*United States v. Willis*, 89 F.3d 1371 (8th Cir. 1996)
*United States v. Wanna*, 744 F.3d 584 (8th Cir. 2014)
*United States v. Colton*, 742 F.3d 345 (8th Cir. 2014)

## III. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION BY IMPOSING A WITHIN-GUIDELINES-RANGE SENTENCE OF LIFE IMPRISONMENT.

*United States v. Gaye*, 902 F.3d 780 (8th Cir. 2018)
*United States v. Vaca*, 289 F.3d 1046 (8th Cir. 2002)
*United States v. Garcia*, 946 F.3d 413 (8th Cir. 2019)

## STATEMENT OF THE CASE

### A. Procedural History.

A federal grand jury returned a two-count Indictment in March 2020, charging Little Bird with violations of 18 U.S.C. §§ 1153, 2241(c), 2246(2), and 2260A. R. Doc. 1. The first count of the Indictment charged Aggravated Sexual Abuse of a Child of victim S.I.R. Count II charged Little Bird with Committing a Felony Sex Offense Against a Minor While Required to Register as a Sex Offender.

In October 2021, a Superseding Indictment was returned adding three additional counts. R. Doc 37. Counts One and Two remained the same as in the original Indictment. Count Three charged Sexual Abuse of a Person Incapable of consent, in violation of 18 U.S.C. §§ 1153, 2242(2), and 2246(2), with S.S.W. being

2

the victim of that offense. Count Four charged Little Bird with a second violation of Committing a Felony Sex Offense Against a Minor While Required to Register as a Sex Offender. Count Five alleged Tampering With a Witness, in violation of 18 U.S.C. §§ 1512(b)(1) and 1512(i).

Little Bird proceeded to a jury trial on November 16, 2021. On November 18, 2021, the jury returned guilty verdicts for Aggravated Sexual Abuse of a Child (S.I.R.), Committing a Felony Sex Offense Against a Minor While Required to Register as a Sex Offender, and Tampering With a Witness. R. Doc. 84.

The jury could not reach unanimous verdicts on the two counts involving S.S.W. The district court declared a mistrial on those counts. R. Doc. 85. The district court later granted the Government's motion to dismiss Counts III and IV of the Superseding Indictment, without prejudice. R. Doc. 89 and 94.

On December 1, 2021, Little Bird filed a Motion for Acquittal, or in the alternative, a Motion for a New Trial. R. Doc. 96. The Government filed a response opposing the motion on December 8, 2021. R. Doc. 97. The district court denied both of Little Bird's alternative motions on January 14, 2021. R. Doc. 102.

On May 23, 2022, Little Bird was sentenced within the Guidelines range to life in prison for Aggravated Sexual Abuse of a Child. The district court imposed the mandatory minimum sentence of 120 months for the Committing a Felony Sex Offense Against a Minor While Required to Register as a Sex Offender conviction,

to run consecutively to the sentence imposed on the sex offense conviction. On the Tampering With a Witness conviction, Little Bird was sentenced to 60 months' imprisonment, to run concurrently. R. Doc. 106-07.

Little Bird's timely notice of appeal was filed on June 3, 2022. R. Doc. 109.

## B. Statement of Factual Background.

### 1. Evidence Regarding Little Bird's Abuse of S.I.R.

S.I.R. was born in 2005. TT 108. S.I.R. went to live with her grandmother in Little Eagle, South Dakota, because her mother was unable to take care of her properly. TT 112-13, 198.[2] Little Bird was already living there by the time S.I.R. moved in with her grandmother.[3] TT 149. She did not know Little Bird at all prior to that time. TT 149.

S.I.R. was unable to give time frames of when she moved in with her grandmother, or when the offense occurred. TT 112, 138, 140. Little Bird, however, entered into a stipulation that set forth the relevant time frames in this matter. Tr. Exh. 41. The parties stipulated that Little Bird was released from federal prison on June 3, 2016. TT 24-25; Tr. Exh. 41. Prior to his release from prison, on May 25,

---

[2] The parties entered into a jurisdictional stipulation that the community of Little Eagle, where the offense occurred, was within the exterior boundaries of the Standing Rock Sioux Tribe Reservation, and thus, within Indian country. TT 25-6; Tr. Exh. 1.

[3] The parties entered into a jurisdictional stipulation that Little Bird is an Indian for purposes of 18 United States Code § 1153. TT 25; Tr. Exh. 1.

4

2016, United States Probation Officer (USPO) Savannah Peterson did a home inspection at the home of S.I.R.'s grandmother, where Little Bird proposed to be released. TT 82. S.I.R. was not yet living in the home at that time. TT 82-3. Little Bird arrived in South Dakota following his release from prison on June 6, 2016. TT 76. He registered as a sex offender on June 9, 2016, listing Little Eagle, South Dakota as his address. TT 24-5; Tr. Exh. 41. After Little Bird arrived in Little Eagle, USPO Peterson received a call from Little Bird, advising that S.I.R.'s grandmother had received custody of S.I.R. and her sister, S.S.W. A week or two after Little Bird arrived in Little Eagle, USPO Peterson talked to S.I.R.'s grandmother about Little Bird living in the residence. TT 77. USPO Peterson made home visits with Little Bird in Little Eagle on June 15, 2016, and June 30, 2016. TT 83-4. Little Bird also stipulated that, on July 28, 2016, a petition to revoke supervised release was filed, and that he was arrested on that petition on August 11, 2006. TT 24-5; Tr. Exh. 41. Lastly, the parties stipulated that Little Bird did not register as a sex offender at any other address besides the one in Little Eagle during the time he was out of custody between June 3, 2016 and August 11, 2016. TT 24-5, 91-4; Tr. Exh. 41.

While she was living there, S.I.R. did not have her own bedroom and would sleep on an "air bed" next to the television in the living room. TT 113, 142. There was also a pull out couch/futon in the living room for people to sleep on. TT 113-14, 332-3, 337-8.

Appellate Case: 22-2176   Page: 13   Date Filed: 10/20/2022 Entry ID: 5209811

S.I.R. and Little Bird did a lot of things together.  TT 133, 141.  They would draw together, or he would watch her draw.  TT 133.  They would talk and tell stories to each other.  TT 133.

One night, S.I.R. was watching the movie *Unfriended* in the living room of her grandmother's house.  TT 111, 114-115.  Little Bird and S.S.W. were also in the living room watching the movie.  TT 114.  She did not recall the date this happened but testified that she was 11 years old.  TT 133-134, 137.  The other people who were in the house were in other rooms throughout the home.  TT 114.  S.I.R. was sitting in front of the television.  TT 114.  Little Bird was laying on the pull-out couch/futon behind S.I.R.  TT 114-15.  The pull-out couch was folded out like a bed.  TT 114.  S.I.R. was close enough to the pull-out couch/futon that if she extended her arm, she could touch it.  TT 116.  S.S.W. was laying on the air mattress to the left of S.I.R.  TT 116.

While watching the movie, S.S.W. fell asleep.  TT 116-17.  S.I.R. also fell asleep in the middle of the movie.  TT 116.  S.I.R. recalled that she was wearing shorts and underwear, but no bra.  TT 117-18.  She could not recall what else she had on.  TT 117.

The next thing S.I.R. remembered was being pulled.  TT 118.  There was a hand on her left wrist pulling her toward the pull-out couch/futon.  TT 118.  S.I.R. looked and saw that it was Little Bird who was pulling her.  TT 118-19.  Little Bird

6

pulled S.I.R. to the long side of the pull-out couch/futon. TT 119. Little Bird then used the palm of his hand to rub S.I.R.'s stomach in a slow, circular, motion over her clothing. TT 119-20, 150. Then, Little Bird's hand moved downward toward S.I.R.'s "private parts." TT 120. As Little Bird's hand got to the bottom of the shirt S.I.R. was wearing, his hand went underneath her clothing. TT 120-21. Little Bird's hand then went under the waistband of S.I.R.'s shorts but was over her underwear. TT 121-22, 150.

Little Bird's hand then went underneath S.I.R.'s underwear and he had direct, skin-to-skin, contact with S.I.R.'s vagina. TT 122-23, 128, 150. Little Bird's hand was "cupped" over S.I.R.'s vagina. TT 127. S.I.R. demonstrated the cupping motion for the jury, to indicate that Little Bird's hand was in the shape of the letter "C." TT 127. Little Bird's fingers did not penetrate S.I.R.'s vagina. TT 128.

S.I.R. grabbed Little Bird's wrist and pulled herself up to stop Little Bird from touching her. TT 128, 144. S.I.R. looked up and saw that Little Bird had a smile on his face. TT 129. Little Bird told S.I.R. "Let me touch it." TT 129. S.I.R. did not respond. TT 129. Instead, she pushed his hand away and got up. TT 129. Little Bird then rolled over on his side and went to sleep. TT 129. S.I.R. got onto the air mattress with S.S.W. and tried to wake her sister up but was unsuccessful. TT 129, 146-47. S.I.R. then cried herself to sleep. TT 130.

Appellate Case: 22-2176    Page: 15    Date Filed: 10/20/2022 Entry ID: 5209811

The next day, Little Bird "pretty much" left the Little Eagle address. TT 147-48, 151. On July 7, 2016, Little Bird contacted USPO Peterson indicating that he needed to move from the house in Little Eagle. TT 84, 102, 107. USPO Peterson authorized Little Bird to relocate. TT 84-85. After that, Little Bird advised USPO Peterson that he was moving back and forth between Little Eagle and other places. TT 88.

S.I.R. did not immediately disclose what happened. TT 130, 147. On July 25, 2016, S.I.R. told her grandmother what happened. TT 130. Her grandmother started crying and then called somebody, but S.I.R. was unsure who it was. TT 31.

USPO Savannah Peterson testified that on July 25, 2016, she received a call from S.I.R.'s grandmother. TT 77, 81. S.I.R.'s grandmother told her about the disclosure that S.I.R. had made to her. TT 77. In response to the information she received, USPO Peterson contacted law enforcement. TT 77, 81. USPO Peterson spoke with Bureau of Indian Affairs (BIA) Police Officer, Raymond Webb. TT 77-8.

After meeting with USPO Peterson, Officer Webb met with S.I.R. and her grandmother. TT 99. He spent between five and 10 minutes with S.I.R. taking her information, and then forwarded it on to a case agent for a forensic interview to be done. TT 99-101, 103.

8

During the forensic interview, the interviewer used a drawing of an anatomically correct boy and girl to assist S.I.R. in demonstrating where she was touched. TT 123-24; Tr. Exh. 4. S.I.R. placed two circles on the drawing to show where Little Bird touched her. TT 124-126; Tr. Exh. 4. The first circle that S.I.R. placed on the drawing was on the "belly" of the girl. TT 126; Tr. Exh. 4. S.I.R. drew a second circle over the girl's "privates" to demonstrate that was where she was touched next. TT 126; Tr. Exh. 4. S.I.R. also circled the hand on the drawing of the boy to demonstrate that is what Little Bird touched her with. TT 126-7; Tr. Exh. 4.

When S.I.R. was 13, she wrote out what happened between her and Little Bird. TT 134, 137, 145. Her grandmother had called her a liar about "all of this stuff going on." TT 144-145, 153, 155-56. S.I.R. could not talk about what happened, so she "wrote it all down" and gave it to her grandmother. TT 145-46, 154. Tr. Exh. 3. The handwritten statement indicated:

> All I remember about that night was I was half sleeping when I was watching a movie Unfriended, to be specific. I can't spell. Sorry. When he pulled me toward him (I was laying on the floor). He tried to put his hand down my pants (shorts). I woke up from my daze and laughed nervously (I admit I laughed). He seen I was awake and said, "Let me touch it." I said, "no." And he let me go. I scooted away from him and thought about what had happened. I realized what happened. So I got onto the air bed with S.S.W. She was sleeping. I tried waking her up (I was crying by now). I couldn't so I gave up and couldn't sleep. That's my story. I'm sorry if I made you mad.

9

Don't get me wrong.  I still love you, even if you hate me.
I'm sorry.  I'm sorry.

Tr. Exh. 3.

## 2.    Evidence Regarding Little Bird's Abuse of S.S.W.

S.S.W. was born in 1998.  She testified that she had a "really good" relationship with Little Bird prior to 2012.  TT 216.  In 2012, when she was 14 years old, Little Bird took her to Bismarck, North Dakota, to do some shopping.  TT 215. Little Bird's girlfriend, Jamie Bruguier was also along for the trip.[4]  TT 216, 221, 333.  Little Bird bought S.S.W. some clothes.  TT 218, 247, 253.

Before leaving the Bismarck/Mandan area, Little Bird stopped at a liquor store and bought a "small case" of beer and a bottle of whiskey.[5]  TT 219, 224.  After leaving Bismarck, they traveled to McLaughlin, South Dakota.[6]  There, they went to the home of Jamie Bruguier's mother.  TT 220.  When they got there, three of Bruguier's siblings were at the house.  TT 220, 254.  Bruguier's mother was not home.  TT 222, 254, 258.

---

[4] Jamie Bruguier passed away in 2018.  TT 209, 333.

[5] S.S.W. testified that a "small case" was a 12-pack.  TT 257.

[6] The parties entered a jurisdictional stipulation that the community of McLaughlin, where the offense occurred, was within the exterior boundaries of the Standing Rock Sioux Tribe Reservation, and thus, within Indian country.  TT 219; Tr. Exh. 1.

Appellate Case: 22-2176     Page: 18     Date Filed: 10/20/2022 Entry ID: 5209811

Once they arrived there, Little Bird started drinking the bottle of whiskey, and Bruguier was drinking the beer. TT 223-24, 248. None of the other people present, including S.S.W., drank any of the alcohol. TT 224. Little Bird had marijuana with him. TT 229. S.S.W. smoked marijuana with Little Bid and Bruguier. TT 224-25, 251. The three of them smoked nine or 10 marijuana cigarettes over a few hours. TT 225-27.

As the evening went on, S.S.W. got tired and asked if they were going to go home to Little Eagle. TT 228-29, 254. After she was told that they were going to spend the night there, S.S.W. asked if she could lay down. TT 229. She laid down by herself on a mattress on the living room floor. TT 230. At some point later on, Bruguier laid down on the mattress with S.S.W. TT 230. S.S.W. was laying on the left side of the mattress, facing right, while Bruguier was on the right side of the mattress and laid down facing S.S.W. TT 231. After Bruguier laid down, S.S.W. fell asleep. TT 231. She was wearing, jeans, a tank top, a shirt, a sweater, underwear, a bra, socks, and shoes. TT 232.

When S.S.W. woke up, the house was dark. TT 231. There was a light on above the kitchen sink, and a television in the kitchen was still on. TT 231. When S.S.W. woke up, someone's hand was touching her vagina skin-to-skin. TT 231-3. The hand was rubbing S.S.W.'s vagina in a back and forth, up, and around motion.

11

TT 233-4.  S.S.W. used her own hand to demonstrate the motion for the jury.  TT 234.

S.S.W. looked to see who it was that was doing this.  TT 235.  When she looked, S.S.W. saw that it was Little Bird that was touching her.  TT 235.  Little Bird was laying in the middle of the bed between S.S.W. and Bruguier.  TT 236-7.  Little Bird was laying on his side with his arm up on his head to prop himself up.  TT 235-6.  When she looked to see who it was, she saw that Little Bird was looking back at her.  TT 235.  Little Bird appeared to look shocked that S.S.W. woke up.  TT 235.

Initially, S.S.W. froze and could not move.  TT 237.  S.S.W. estimated that she laid there another five to ten minutes.  TT 238.  During that time, Little Bird's hand continued moving.  TT 238.  She then felt "uncomfortableness," got up, and got away.  TT 237.  S.S.W. went into the kitchen.  TT 238.  S.S.W. was hoping that Bruguier's brothers would still be in the kitchen playing video games.  TT 220, 238-9.  They were not there.  TT 238-39.  Throughout this, S.S.W. and Little Bird did not say anything to each other.  TT 239.

After S.S.W. went into the kitchen, Little Bird got up and off the bed.  TT 239.  Bruguier also started moving around.  TT 239.  Little Bird told Bruguier to go with him.  TT 239.  Little Bird and Bruguier went into a back part of the residence.  TT 239.  The two of them were gone for approximately 20 minutes.  TT 240.  When

they came out, S.S.W. and Bruguier greeted each other, and then S.S.W. asked Bruguier if they would take her home. TT 240. Bruguier told her they would, so S.S.W. grabbed her stuff and waited at the front door. TT 240. Bruguier suggested they have breakfast before leaving, but S.S.W. said she would rather go home. TT 240. Little Bird and Bruguier took S.S.W. home. TT 241.

Like her sister, S.S.W. did not tell anyone what happened immediately. TT 241, 253. In fact, she did not come forward with her disclosure even after S.I.R. made her disclosure, because she was worried about how her family was going to react. TT 242.

S.S.W. disclosed what happened in July 2021, after the phone calls made by Little Bird to S.S.W.'s mom and grandmother. TT 243-4. The phone calls "conflicted" her mom and grandmother. TT 244. There were days where they were, "Yeah, he did it," and there were days where they would say "He didn't do it." TT 245. S.S.W. testified that her mother and grandmother were suggesting that Little Bird did not do it. TT 244. This upset S.S.W. and she "just couldn't take it anymore." TT 244. S.S.W. did not feel right about her mother and grandmother being mad at S.I.R., when S.S.W. felt it was true, because Little Bird did the same thing to her too. TT 244-46.

Appellate Case: 22-2176    Page: 21    Date Filed: 10/20/2022 Entry ID: 5209811

### 3. Evidence Regarding Little Bird's Prior Sex Offense Conviction.

In 2006, Little Bird was convicted of Sexual Abuse of a Minor. TT 24; Tr. Exh. 40. As a result of that conviction, he was required to register as a sex offender. TT 24; Tr. Exh. 41. During trial, the parties entered into two stipulations regarding Little Bird's conviction and his need to register as a sex offender. TT 22: Tr. Exh. 40-1.

Government's Exhibit 40 dealt with the factual basis for Little Bird's sex offense conviction. The stipulation indicated:

> In late June or July of 2005, 14-year-old W.R.T. was introduced to the defendant, who was age 23 at the time.
>
> Several days later, around 11 p.m., the defendant went to W.R.T.'s home with a friend and visited with her through her bedroom window. The visit was short, but the defendant said that he would come back with his friend.
>
> At 1:50 a.m., the defendant and his friend returned to W.R.T.'s home. The defendant and his friend had been drinking and the friend passed out. The defendant sat on the side of the bed. At some point, defendant pushed W.R.T.'s shorts and panties to one side and began to insert his penis into her vagina. W.R.T. told the defendant to stop. The defendant did not stop. The defendant knew W.R.T. was too young to consent to sexual intercourse.
>
> On March 23, 2006, the Defendant Kimo John Little Bird, Sr. was charged in the United States District Court for the District of South Dakota with the offense of sexual abuse of a minor in Case Number CR. 06-30028. On June 2, 2006, the Defendant Kimo John Little Bird, Sr. appeared

before the Honorable Charles B. Kornmann and pled guilty to the charge of sexual abuse of a minor.

TT 22-23; Tr. Exh. 40.

Government's Exhibit 41 set forth Little Bird's requirement and obligation to register as a sex offender based on that conviction. TT 24-5; Tr. Exh. 41.

> On March 23, 2006, the Defendant was charged in the United States District Court for the District of South Dakota with the offense of sexual abuse of a minor. CR. 06-30028. On June 2, 2006, the Defendant appeared before United States District Court Judge Charles B. Kornmann and pled guilty to the indictment.
>
> As a result of this conviction, the Defendant is classified as a Tier II sex offender and must register for 25 years following the conviction. The Defendant is required to register as a sex offender semi-annually, as well as update his registration within three days of a change in residence, employment, and student status.
>
> Between January 1, 2012, and December 31, 2012, and June 3, 2016, and July 24, 2016, the Defendant was required by federal, state, tribal, and other law to register as a sex offender.

TT 24-5; Tr. Exh. 41.

### 4. Evidence Regarding Little Bird's Tampering With a Witness.

Little Bird was arrested on a Petition to Revoke Supervised Release regarding his federal conviction for being a Felon in Possession of a Firearm on August 11, 2016. TT 24-5; Tr. Exh. 41. Following his arrest, he was held at the Faulk County Jail. TT 172-3, 177. While he was in custody, Little Bird made phone calls from

15

the jail to S.I.R. and S.S.W.'s grandmother and mother. TT 172-3. The calls from the jail were recorded. During the trial, the Government introduced recordings of 13 calls made by Little Bird from the Faulk County Jail. Tr. Exhs. 7-14, 16-20. The Government also introduced transcripts of those recordings, which the jury was allowed to look at while the recordings played, but they were not allowed to keep them, or take them back to the jury room with them. TT 173, 176-7; Tr. Exhs. 7a-14a, 16a-20a.

During the second phone call on June 8, 2021, Little Bird told the girls' grandmother that the girls' mother was trying to get the charges dropped, but could not get ahold of the "feds." Tr. Exhs. 8, 8a. Little Bird indicated that was all his attorney was waiting on in order to get Little Bird out of jail. Tr. Exhs. 8, 8a.

During the fourth call on June 13, 2021, Little Bird told the girls' grandmother that while in jail, he sustained 13 stitches and a broken nose. Tr. Exhs. 10, 10a. He also indicated that the "only way sister and them could drop the charges is if they write a letter saying that they lied and then that's the only way they'll drop the charges." Tr. Exhs. 10, 10a. Little Bird then asked the girls' grandmother to talk to the girls' mother to "let her know that because she needs to get that done right away." Tr. Exhs. 10, 10a.

On June 22, 2021, Little Bird made the fifth call to the girls' grandmother. Tr. Exhs. 11, 11a. During the call, Little Bird told the girls' grandmother that his

16

attorney is waiting on a "letter saying that they lied and shit." Tr. Exhs. 11, 11a.

Little Bird reiterated that his attorney "needed letters stating that she lied, or I mean that way they can release me right away." Tr. Exhs. 11, 11a. He then indicated for a third time during the call that he will be in jail "until you get that done, until the paperwork gets signed and stuff." Tr. Exhs. 11, 11a. Little Bird then asked the grandmother to tell S.I.R. that he loves her. Tr. Exhs. 11, 11a. During that call, Little Bird was told that a letter came for him about his stimulus money. TT 180; Tr. Exhs. 11, 11a.

Little Bird talked to the girls' mother during a sixth call, which took place on June 23, 2021. Tr. Exhs. 12, 12a. During their conversation, Little Bird tells the girls' mother that "my attorney said all you guys got to do is sign a letter saying that you lied, she lied, and you guys have to sign it and then send it to her. . . You guys have to have baby girls and moms and then baby S.I.R.'s and yours, all your guy's signature." Tr. Exhs. 12, 12a. The girls' mother told Little Bird that they had spoken to the case agent, but that he told them that "it was out of our hands," but offered to call Little Bird's attorney. Tr. Exhs. 12, 12a. Later in the call, Little Bird indicated, "as soon as you guys get that done, I'll be out." Tr. Exhs. 12, 12a. He then told the girls' mother to "get ahold of my attorney all you have to do is uh, she'll let you know what to do." Tr. Exhs. 12, 12a.

17

The seventh call from Little Bird was made on July 2, 2021. Tr. Exhs. 13, 13a. During this call, Little Bird again asks the girls' grandmother if the girls' mother "do anything about it yet." Tr. Exhs. 13, 13a. Little Bird reiterates that all his attorney needed was a letter "stating that she lied and that's it, and then they'll let me out." Tr. Exhs. 13, 13a. During this call, they again discussed Little Bird's stimulus payment. TT 181; Tr. Exhs. 13, 13a.

During a phone call with the girls' grandmother on July 5, 2021, Little Bird asked her to have the girls' mother "to get on that for me. To call," in order "to get on my attorney tell my attorney to hurry up and get me out of here." Tr. Exhs. 14, 14a. They also discussed Little Bird's stimulus money for a third time. Tr. Exhs. 14, 14a.

The tenth call made by Little Bird to the girls' grandmother was made on July 23, 2021. Tr. Exhs. 16, 16a. This call was made after S.S.W. made her disclosure about being sexually abused by Little Bird. During this call, for the first time, Little Bird referenced that "S.S.W. baby were trying to get the thing dropped." Tr. Exhs. 16, 16a.

On July 26, 2021, Little Bird made an eleventh call to the girls' grandmother. Tr. Exhs. 17, 17a. During the call, Little Bird indicated that he thought S.S.W. "said they were going to try go up and get it dropped." Tr. Exhs. 17, 17a. During this call, Little Bird told the girls' grandmother that "as soon as you get that stimulus

18

thing figured, I'm going to give you half of it."  Tr. Exhs. 17, 17a.  Little Bird

indicated, "it should be like $3,000 or something so like I'll give guys $1,500."  Tr.

Exhs. 17, 17a.

Little Bird made another phone call the very next day.  Tr. Exhs. 18, 18a.

Little Bird told the girls' grandmother that his attorney was going to call, and he

asked the grandmother to call the attorney.  Tr. Exhs. 18, 18a.  Little Bird again said

that his attorney indicated, "all she needs is a statement from her saying that she lied

and then they'll drop them."  Tr. Exhs. 18, 18a.  When Little Bird was told that the

case agent indicated that "she can't do nothing like that," Little Bird responded,

"Yeah, no that's fucking, that's bullshit they. . . . they say things like that to scare

them into that stuff."  Tr. Exhs. 18, 18a.  Little Bird then told the girls' grandmother

to "tell them next he says that to tell him they want that in writing so that they, he'll

back down."  Tr. Exhs. 18, 18a.  When Little Bird was told that the conversation

with the case agent was over the phone, so there would be no recording of it, Little

Bird responded, "Yeah, they don't record them unless they, unless I mean he'll make

that disappear."  Tr. Exhs. 18, 18a.  He then indicated again to "call her tomorrow

and find out what's going on. "  Tr. Exhs. 18, 18a.

The longest of the phone calls took place on August 11, 2021.  Tr. Exhs. 19,

19a.  During this call, Little Bird told the girls' grandmother that he talked to his

attorney and told her to call because "as soon as you get that done, I said I think you

19

should try and get that done so you can get me out of here." Tr. Exhs. 19, 19a. Little Bird indicated his attorney advised him that even if the girls attempted to drop the "accusation," it would not matter and that they would still have to go to court. Tr. Exhs. 19, 19a. Little Bird took issue with that, and indicated that he was "allowed that," and that "after it's all dropped, there's nothing they can do." Tr. Exhs. 19, 19a. Little Bird then indicated that there was another accusation, and that it was "probably S.S.W." Tr. Exhs. 19, 19a. Later in the call, Little Bird inquired about "what does S.S.W. baby got to say?" Tr. Exhs. 19, 19a. He asked the grandmother to "call her and see what's going and see what baby and them are doing over there." Tr. Exhs. 19, 19a.

The final call was made by Little Bird on August 13, 2021. Tr. Exhs. 20, 20a. During the call, Little Bird indicated that his trial was being continued, but that he wanted "to try and hurry up and get out of here." Tr. Exhs. 20, 20a. Little Bird then told the girls' grandmother to tell S.S.W. to "watch out because whatever they say, they're going to try and use against me. Like new accusations and shit." Tr. Exhs. 20, 20a.

The girls' grandmother testified that during these phone calls she felt that she was "being pressured" by Little Bird to get the charges against him dropped. TT 189. She also testified that even though she told Little Bird that she intended on talking to the girls' mother about the girls writing letters indicating that they had

20

lied, she never actually intended to do so. TT 190-92. She indicated she told Little Bird that because the conversations with Little Bird played on her emotions. She felt conflicted because her family was involved, and "I just went with my heart." TT 179, 185-6, 190. She also said that she did not want Little Bird to "feel bad." TT 179.

### C.    Motions for Judgment of Acquittal and Verdict.

After both sides rested, Little Bird made a motion for judgment of acquittal pursuant to Federal Rule 29, as to all counts. TT 343. Little Bird made specific arguments regarding Count III (Sexual Abuse of S.S.W.) and Count V (Tampering With a Witness). TT 343. As to Count V, Little Bird argued that there was not a sufficient showing that Little Bird had intimidated, threatened, and corruptly persuaded any witness in the case. TT 343. Little Bird argued that the girls' mother and grandmother "decided to try to appear that they were doing things for him out of the goodness of their heart and felt motivated to. But there was definitely no threats, which is required. No intimidation. There was nothing that he ever threatened them. And, therefore, there has been an insufficient showing on that count as well." TT 344. No specific argument was made related to Counts I and II regarding the sexual abuse of S.I.R. TT 343-4.

The district court denied the motion in its entirety. TT 344. As to the Tampering With a Witness charge, the district court ruled that "any crime includes

21

an attempt," and denied Little Bird's motion for judgment of acquittal on Count V of the Superseding Indictment.  TT 344.

### D.    Post-Trial Motion for Judgment of Acquittal.

Post-trial, Little Bird filed a Motion for Acquittal, or in the alternative, a Motion for a New Trial regarding Counts I (Aggravated Sexual Abuse of a Child) and V (Tampering With a Witness).  R. Doc. 96.  In support of his motion, Little Bird argued that "there was no evidence presented at trial from which a reasonable jury could conclude the age of S.I.R. at the time of the alleged incident was under the age of 12."  R. Doc. 96.  At trial, Little Bird testified that he "was simply following the advice of his attorney and specifically doing what she had directed him to do." R. Doc. 96.  Little Bird argued on Count V that "since he was following the advice of counsel, this would negate any possibility that he was knowingly doing something which amounted to corrupt persuasion."  R. Doc. 96.  Little Bird also argued that none of the counts were supported by sufficient evidence to warrant the jury to convict him beyond a reasonable doubt.  R. Doc. 96.

The district court denied both of Little Bird's alternative motions on January 14, 2012.  R. Doc. 102.  As it related to the Aggravated Sexual Abuse of a Child, the district court found that S.I.R. explained the sexual abuse perpetrated by Little Bird against her, using his hand to touch her genitalia skin-to-skin.  The district court also found that the offense date alleged was all within a time frame when S.I.R. would

have been 11 years old, and that S.I.R. testified that she had not turned twelve yet when this incident took place. R. Doc. 102.

As it relates to the Tampering With a Witness conviction, the district court found that although Little Bird contended at trial that he was simply following the advice of his former counsel, the United States presented alternative theories that Little Bird used his relationship with S.I.R. and S.S.W.'s mother and grandmother to invoke their sympathy, and that Little Bird sought to further entice the girls' grandmother by promising to hand over approximately $1,500 of his federal stimulus check to corruptly persuade them to get S.I.R. and S.S.W. to write a letter recanting their allegations. R. Doc. 102. The district court did not disturb the verdict, finding that there were two conflicting theories presented to the jury for Little Bird's jail house phone calls, and the jury found beyond a reasonable doubt that the Government's theory was more credible, that Little Bird did, in fact, possess the requisite *mens rea*. R. Doc. 102.

### E. Sentencing.

Following Little Bird's conviction, the district court ordered a Presentence Investigation Report (PSR). TT 417; R. Doc. 88. The PSR contained Offense Level Calculations. PSR ¶¶ 15-26. The PSR grouped Counts 1 and 5 for Guidelines calculation purposes because "one of the counts embodies conduct that is treated as

23

a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the count(s) U.S.S.G. §3D1.2(c)." PSR ¶ 17.

The Base Offense Level for the Aggravated Sexual Abuse of a Child was 38 pursuant to U.S.S.G. § 2A3.1(a)(1). Pursuant to U.S.S.G. § 3C1.1, a two-level enhancement was imposed for Obstruction of Justice. In applying a possible Chapter 4 (Criminal History and Criminal Livelihood), the PSR noted that the offense of conviction is a covered sex crime, §4B1.1 (Career Offender) did not apply, and the defendant committed the instant offense of conviction after at least one sex offense conviction. PSR ¶ 24. Therefore, Little Bird is a repeat and dangerous sex offender against minors. PSR ¶ 24. The PSR noted that offense level is the greatest of §§4B1.5(a)(1)(A) or (B). PSR ¶ 24. In this case, the offense level determined under Chapters Two and Three, 40, is the greatest and applicable offense level. U.S.S.G. §4B1.5(a)(1)(A). PSR ¶ 24.

The PSR also calculated Little Bird's Criminal History Category. PSR ¶¶ 27-38. It noted that Little Bird committed the instant offense while under a criminal justice sentence for Felon in Possession of Firearm; therefore, 2 points were added. U.S.S.G. §4A1.1(d). PSR ¶ 37. The PSR calculated Little Bird's total criminal history score as 18, which established a criminal history category of VI. PSR ¶ 38.

Appellate Case: 22-2176    Page: 32    Date Filed: 10/20/2022 Entry ID: 5209811

Little Bird objected to the enhancement for obstruction of justice. R. Doc. 99. He did not object to the Criminal History Calculation in the PSR. R. Doc. 99. The Government objected to the PSR to the extent that it did not provide any enhancements for S.I.R. being a vulnerable victim or for being in the care, custody, or supervisory control of Little Bird. R. Doc. 103.

At the Sentencing Hearing on May 23, 2022, the district court overruled both parties' objections to the PSR. ST 7-14. In denying Little Bird's objection to the enhancement for Obstruction of Justice, the district court found that it flew in of the face of what the jury found. ST 11. Specifically, the district court ruled:

> When the defendant was repeatedly telephoning the grandmother and maybe the mother -- I'm not sure, and, in fact, I recall that he was offering to give the family his COVID payment, which could be a monetary inducement or monetary bribe, if you will.
>
> Mr. Little Bird was misled by the grandmother as to what she was going to do. But that's her – that's her – that isn't a crime, to lie to the defendant. And I can understand why she did that. She's trying to protect her family and does not want the defendant causing further misery to the children and the mother, for that matter.
>
> And so I find that he did attempt to obstruct justice. He didn't get away with it, but he clearly attempted to obstruct justice, and I find that he acted willfully and not out of any confusion or mistake.
>
> So the objection of the defendant as to making those calls . . . the mother of S.S.W. and S.I.R., asking them to put together written statements recanting their allegations, that objection is overruled, particularly when you tie it in with offering to give them portions of his stimulus payments.

25

And the objection of the defendant also as to double-counting is overruled.

ST 12.

Based upon a total offense level of 40 and a criminal history category of VI, the Guidelines imprisonment range was 360 months to life for the grouped offenses of Aggravated Sexual Abuse of a Child and Tampering With a Witness. PSR ¶ 80. On the conviction for Felony Sex Offense Against a Minor While Required to Register as a Sex Offender, there was a minimum term of imprisonment of 10 years, required by statute. PSR ¶ 80. Also, the sentence for the Felony Sex Offense Against a Minor While Required to Register as a Sex Offender had to run consecutively to Little Bird's sentence for Aggravated Sexual Abuse of a Child conviction, under the Guidelines, and so Little Bird faced a statutory minimum sentence of 480 months. ST 22; PSR ¶ 80.

Prior to imposing sentence, the district court noted:

- It was not surprised by the verdicts because the evidence was overwhelming, and defense counsel had "mission impossible." ST 19, 21;

- Little Bird is a very dangerous individual who does not appear to have learned lessons from prior convictions. ST 22;

- Little Bird has a very bad record, placing him in the highest criminal history category possible.

- Little Bird has a prior conviction at age 24 for sexual abuse of a minor for knowingly and intentionally causing a

Appellate Case: 22-2176    Page: 34    Date Filed: 10/20/2022 Entry ID: 5209811

minor, W.R.T., age 14, to engage in a sexual act, that is, contact between the defendant's penis and W.R.T.'s vulva. ST 21; PSR ¶ 29;

- After he was released from prison, his supervised release was revoked on two separate occasions, both for failing to reside and participate in a program at a community corrections center. ST 21; PSR ¶ 29;

- Little Bird was also convicted of Felon in Possession of a Firearm. Law enforcement was attempting to arrest Little Bird on active warrants. Prior to making the arrest, it had come to law enforcement's attention that Little Bird made threats to law enforcement on Facebook, stating he would shoot police. ST 21; PSR ¶ 32;

- Following his release from incarceration in that case, Little Bird again did not follow the rules, and his supervised release was revoked for using controlled substances on multiple occasions. ST 21; PSR ¶ 32;

- While in county jail Little Bird and three other inmates assaulted another inmate, striking and kicking him several times. The inmate was transported to a local hospital due to his injuries. ST 21; PSR ¶ 33;

- Little Bird was convicted three times for Failure to Register as a Sex Offender; twice in South Dakota and once in Las Vegas. ST 21; PSR ¶¶ 31, 35, 36;

- Upon his release from custody on his federal conviction in South Dakota for Failure to Register as a Sex Offender, Little Bird immediately absconded from supervision. PSR 35;

- Likewise, Little Bird immediately absconded from supervision upon his release from the Bureau of Prisons on his federal Failure to Register as a Sex Offender in Nevada. PSR ¶ 36.

27

The district court imposed a Guidelines-range sentence of life imprisonment for Little Bird's Aggravated Sexual Abuse of Child conviction, and 120 months on Little Bird's Felony Sex Offense Against a Minor While Required to Register as a Sex Offender conviction, to run consecutively with each other. R. Doc. 107. The district court then sentenced Little Bird to 60 months for the Tampering With a Witness conviction, to run concurrently. R. Doc. 107. Because a life sentence was imposed, the district court did not impose a term of supervised release. ST 22; R. Doc. 107.

Additional facts will be added as necessary.

## SUMMARY OF THE ARGUMENT

The district court appropriately denied Little Bird's motions for judgment of acquittal because ample evidence supported his convictions. S.I.R. provided detailed testimony at trial that while she was falling asleep on the floor, Little Bird dragged her to him by her arm, then put his hand down her underwear and touched her vagina skin-to-skin. Furthermore, while Little Bird was detained and awaiting trial on the indictment at the Faulk County Jail, he made telephone calls to the charged victims' mother and grandmother. Little Bird asked them to get S.I.R. to make written statements recanting her allegations against him.

Little Bird's presentence report revealed a total offense level of 40, and a criminal history category of VI, resulting in a Guidelines range of 360 months to

life.  PSR ¶¶ 26, 38, 80.  The district court considered the nature of the sexual abuse and Little Bird's lengthy criminal history.  ST 20-22.  The district court followed the procedural requirements and considered the remaining 18 U.S.C. § 3553(a) sentencing factors when exercising its broad discretion to determine the appropriate sentence.  The district court imposed a presumptively reasonable sentence within the Guidelines range, which was substantively reasonable and does not represent an abuse of the district court's broad discretion.

Little Bird's conviction and sentence should be affirmed.

## ARGUMENT

I. **THE DISTRICT COURT DID NOT ERR IN DENYING LITTLE BIRD'S MOTION FOR JUDGMENT OF ACQUITTAL FOR INSUFFICIENT EVIDENCE FOR AGGRAVATED SEXUAL ABUSE OF A CHILD.**

A. **Standard of Review.**

The Court "reviews sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the Government, with all reasonable inferences and credibility determinations made in support of the jury's verdict."  *United States v. Kelly*, 436 F.3d 992, 996 (8th Cir. 2006).  "We must uphold the verdict if there is an interpretation of the evidence that would allow a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt."  *United States v. Walker*, 917 F.3d 1004, 1011 (8th Cir. 2019) (citation omitted).  "We will overturn the verdict only if no reasonable jury could have found the defendant guilty beyond a reasonable

29

doubt." *United States v. King*, 898 F.3d 797, 808 (8th Cir. 2018) (citing *United States v. Colton*, 742 F.3d 345, 348 (8th Cir. 2014)). This Court has indicated that this standard of review is very strict, and a verdict by the jury is not to be overturned lightly. *United States v. Surratt*, 172 F.3d 559, 564 (8th Cir. 1999). In other words, "defendants bear a heavy burden in attempting to overturn their convictions on appeal by challenging the sufficiency of the evidence." *United States v. Willis*, 89 F.3d 1371, 1376 (8th Cir. 1996).

## B. The Evidence to Support the Aggravated Sexual Abuse of a Child Conviction Was Sufficient.

It is well settled that this Court upholds a verdict "if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt." *United States v. Hamilton*, 332 F.3d 1144, 1149 (8th Cir. 2003) (citing *United States v. Jillings*, 156 F.3d 857, 860 (8th Cir. 1998)). "The verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable jury to conclude guilt beyond a reasonable doubt. Decisions regarding credibility of witnesses are to be resolved in favor of the jury's verdict." *United States v. Gabe*, 237 F.2d 954, 961 (8th Cir. 2001) citing *United States v. Eagle*, 133 F.3d 608, 610 (8th Cir. 1998)).

The evidence here supporting the verdict consisted largely of the testimony of the victim, S.I.R. It is well-settled that a victim's testimony alone is "sufficient to persuade a reasonable jury of the defendant's guilt beyond a reasonable doubt."

30

*United States v. Wright*, 119 F.3d 630, 633-34 (8th Cir. 1997); *United States v. Kirkie*, 261 F.3d 761, 768 (8th Cir. 2001); *United States v. White Bull*, 646 F.3d 1082, 1087 (8th Cir. 2011); *United States v. DeCoteau*, 630 F.3d 1091, 1097 (8th Cir. 2011); *United States v. Kenyon*, 397 F.3d 1071, 1076 (8th Cir. 2005). This is true even when the victim's testimony is uncorroborated by any physical evidence. *See United States v. Seibel*, 712 F.3d 1229, 1237 (8th Cir. 2013).

The credibility of a witness is virtually unreviewable because it is a matter for the jury. *United States v. McNeil*, 184 F.3d 770, 778 (8th Cir. 1999). "[I]t is well established that '[t]he issue of witness credibility is virtually unreviewable on appeal because it is preeminently the job of the finder of fact.'" *United States v. Ziesman*, 409 F.3d 941, 948 (8th Cir. 2005) (quoting *United States v. Beaman*, 361 F.3d 1061, 1064 (8th Cir. 2004)).

The jury was instructed to find Little Bird guilty of aggravated sexual abuse of a child if they found beyond a reasonable doubt that he voluntarily and intentionally engaged in a sexual act, that is, the intentional touching, not through the clothing, of the genitalia of S.I.R., at a time when S.I.R. had not attained the age of 12 years, with an intent to abuse, humiliate, harass, or degrade S.I.R. or to arouse or gratify his own sexual desire. R. Doc. 77, at 11; R. Doc. 108, at 5-6 (redacted jury instructions). Other stipulated elements included that Little Bird was an Indian person, and that the offense occurred in Indian country. *Id.*

31

Sufficient evidence supported Little Bird's conviction. S.I.R. testified in detail to the jury the nature and circumstances of the sexual abuse. S.I.R. described how she fell asleep while watching a movie with her sister and Little Bird. TT 111, 114-117. She testified that Little Bird pulled her from the place where she fell asleep on the floor towards the futon where he was laying. TT 114-15, 118-19. Next, S.I.R. testified that Little Bird put his hand down her pants and underneath her panties, touching her genitalia skin-to-skin. TT 122-23, 128, 150. S.I.R. testified that Little Bird's hand was "cupped" over her vagina in the shape of a "C." TT 127. Her testimony provided sufficient facts for the jury to find beyond a reasonable doubt that Little Bird voluntarily and intentionally engaged in a sexual act with S.I.R. The district court indicated at sentencing that the evidence of Little Bird's guilt was "overwhelming." ST 19. It simply cannot be said that Little Bird's jury was unreasonable to have believed her testimony.

Little Bird contends there was no evidence from which the jury could conclude when the alleged sexual assault of S.I.R. occurred because S.I.R. herself was unable to provide a date or month of the incident. AB 11-12. As he did in his post-trial Motion for Judgment of Acquittal, Little Bird argued that S.I.R.'s lack of knowledge regarding the date of the sexual abuse would not allow the jury to find that the offense occurred prior to her twelfth birthday. Although S.I.R. could not testify precisely when the alleged offense occurred, other uncontroverted and

32

stipulated evidence established that the offense took place between June 3, 2016, and July 25, 2016.

It was undisputed that Little Bird was released from federal prison on June 3, 2016. After that, he moved to the residence in Little Eagle where the sexual abuse occurred. Tr. Exh. 41; TT 24-5, 77, 83-4, 88, 91-4, 102, 107, 147, 149. S.I.R. testified that Little Bird was already living there by the time she moved in with her grandmother. TT 149. This was corroborated by the testimony of USPO Savannah Peterson. USPO Peterson did a home inspection at the home of S.I.R.'s grandmother, where Little Bird proposed to be released. TT 82. USPO Peterson testified that S.I.R. was not yet living in the home at that time. TT 82-3. USPO Peterson also testified that after Little Bird arrived in Little Eagle, she received a call from Little Bird, advising that S.I.R.'s grandmother had received custody of S.I.R. and her sister, S.S.W. TT 83. S.I.R. testified that she did not know Little Bird at all prior to that time. It is likewise undisputed that S.I.R. disclosed the sexual abuse on July 25, 2016. TT 31, 77-8, 81, 99-101, 103, 130. Therefore, the offense had to have occurred between June 3, 2016, and July 25, 2016. S.I.R. was born in 2005. During that entire time, S.I.R. was 11 years old. Even if the abuse was at the very end of the charged date range, S.I.R. was still 10 months away from her twelfth birthday. In addition, S.I.R. testified to her date of birth, allowing the jury to calculate her proper age of 11 years between June 3, 2016, and July 25, 2016.

33

Furthermore, S.I.R. testified she was not yet 12-years-old when the sexual abuse occurred. TT 133-134, 137.

Given this record, construing all reasonable inferences to support the verdict, it was entirely appropriate for the jury to find beyond a reasonable doubt that Little Bird sexually abused S.I.R. prior to her 12th birthday. His challenge to the sufficiency of the evidence should be rejected and his conviction affirmed.

## II. THE DISTRICT COURT DID NOT ERR IN DENYING LITTLE BIRD'S MOTION FOR JUDGMENT OF ACQUITTAL FOR INSUFFICIENT EVIDENCE FOR TAMPERING WITH A WITNESS.

### A. Standard of Review.

The Court "reviews sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the Government, with all reasonable inferences and credibility determinations made in support of the jury's verdict." *United States v. Kelly*, 436 F.3d 992, 996 (8th Cir. 2006). "We must uphold the verdict if there is an interpretation of the evidence that would allow a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt." *United States v. Walker*, 917 F.3d 1004, 1011 (8th Cir. 2019) (citation omitted). "We will overturn the verdict only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. King*, 898 F.3d 797, 808 (8th Cir. 2018) (citing *United States v. Colton*, 742 F.3d 345, 348 (8th Cir. 2014)). This Court has indicated that this standard of review is very strict, and a verdict by the jury is not to be

34

overturned lightly. *United States v. Surratt*, 172 F.3d 559, 564 (8th Cir. 1999). In other words, "defendants bear a heavy burden in attempting to overturn their convictions on appeal by challenging the sufficiency of the evidence." *United States v. Willis*, 89 F.3d 1371, 1376 (8th Cir. 1996).

### B. The Evidence to Support the Tampering With a Witness Conviction Was Sufficient.

This Court has many times recognized that "'[t]he jury has the responsibility of resolving conflicts or contradictions in testimony, and we resolve any credibility issues in favor of the verdict.'" *United States v. Wanna*, 744 F.3d 584, 588 (8th Cir. 2014) (quoting *Ali*, 616 F.3d at 755). "'This court does not weigh the evidence or the credibility of witnesses.'" *United States v. Colton*, 742 F.3d 345, 348 (8th Cir. 2014) (quoting *United States v. Wiest*, 596 F.3d 906, 910 (8th Cir. 2010)). "Indeed, '[q]uestions of credibility are the province of the jury.'" *Colton*, 742 F.3d at 348 (quoting *United States v. Chavez*, 230 F.3d 1089, 1091 (8th Cir. 2000)).

All the evidence necessary to support the Tampering With a Witness conviction came from Little Bird's owns words during the jail house phone calls he made to S.I.R.'s mother and grandmother. The 13 phone calls made by Little Bird showed that Little Bird made repeated requests to S.I.R. and S.S.W.'s mother and grandmother to have the girls write letters saying they lied about the sexual abuse. Tr. Exhs. 7-14, 16-20. The phone calls also established that Little Bird used his relationship with the girls' mother and grandmother to invoke their sympathy in an

attempt to corruptly persuade them to get S.I.R. and S.S.W. to write a letter recanting their allegations. Tr. Exhs. 7-14, 16-20. In addition, during Little Bird's phone call on July 26, 2021, Little Bird sought to further entice S.I.R. and S.S.W.'s grandmother by promising to hand over approximately $1,500 of his federal stimulus check, providing further grounds for attempts at knowingly corruptly persuading his family members to aid him. Tr. Ex. 17.

Little Bird contends that he lacked the requisite intent to corruptly persuade the girls' mother and grandmother, in that "he was simply responding to false reports of recantation that the girls' grandmother was relaying to him." AB 11. The phone calls belie Little Bird's contentions. During the second phone call on June 8, 2021, it was Little Bird who led the girl's grandmother to believe that the girls' mother was trying to get the charges dropped. Tr. Exhs. 8, 8a. During the 13 phone calls introduced into evidence, the girls' grandmother never told Little Bird that either girl recanted their allegation. The girls' grandmother lied to Little Bird, but she did not tell him the girls recanted. Rather, she told Little Eagle that she would do what he was asking of her, even though she never intended to do so.

At trial, Little Bird and the Government argued competing motives behind Little Bird's actions. At trial, Little Bird argued that he was following the direction of his former attorney to have S.I.R. and S.S.W. contact law enforcement because their allegations were, in fact, false. On appeal, Little Bird contends that the girls'

36

grandmother led him to believe that they had recanted. Throughout these proceedings, the Government has presented an alternative theory for Little Bird's motive in making the 13 phone calls. The Government contends that Little Bid used his relationship with the girls' mother and grandmother, and the promise of half of his stimulus money, to prove his attempt to corruptly persuade the girls' mother and grandmother to get S.I.R. and S.S.W. to recant their allegations. The jury accepted the Government's theory regarding Little Bird's motive for making the requests to have S.I.R. and S.S.W. write recantation letters.

Given this record, construing all reasonable inferences to support the verdict, it was entirely appropriate for the jury to find beyond a reasonable doubt that Little Bird attempted to corruptly persuade the girls' mother and grandmother to get them to recant their allegations. His challenge to the sufficiency of the evidence should be rejected and his conviction should be affirmed.

## III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY SENTENCING LITTLE BIRD TO A WITHIN-GUIDELINES-RANGE SENTENCE OF LIFE IMPRISONMENT.

### A. Standard of Review.

This Court "review[s] the reasonableness of a sentence under a deferential abuse-of-discretion standard, and [presumes] that a sentence within the advisory guideline range is reasonable." *United States v. Gaye*, 902 F.3d 780, 791 (8th Cir. 2018) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Hemsher*, 893 F3d. 525, 535 (8th Cir. 2018)).

Appellate Case: 22-2176    Page: 45    Date Filed: 10/20/2022 Entry ID: 5209811

**B.** **Little Bird's Sentence is Procedurally Sound and Substantively Reasonable.**

Although Little Bird frames his argument as a violation of his Eighth Amendment rights against cruel and unusual punishment, he does not directly allege an Eighth Amendment violation. Rather, Little Bird argues that his sentence was not substantively reasonable.

When reviewing a challenge to a sentence, this Court "first ensure[s] that the district court committed no procedural error, such as improperly calculating the Guidelines range." *United States v. Belfrey*, 928 F.3d 746, 750 (8th Cir. 2019) (citing *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc)). If the Court finds no procedural error, it "then consider[s] the substantive reasonableness of the sentence under an abuse-of-discretion standard." *Id.*

**1.** **The District Court Did Not Commit a Procedural Error.**

Little Bird contends that the district court committed procedural error by improperly calculating the Guidelines range in this case. AB 25. Little Bird contends that the district court should not have applied a two-level enhancement for Obstruction of Justice, pursuant to U.S.S.G. § 3C1.1.

This Court reviews the district court's interpretation and application of the Guidelines de novo and its factual findings for clear error. *United States v. Bates*, 584 F.3d 1105, 1108 (8th Cir. 2009) (citing *United States v. Pate*, 518 F.3d 972, 975 (8th Cir. 2008). "This court reviews de novo the interpretation and application of

38

the sentencing guidelines." *United States v. Smart*, 501 F.3d 862, 867 (8th Cir. 2007). An enhancement for obstruction of justice is based on findings of fact, which this Court reviews for clear error. *United States v. Vaca*, 289 F.3d 1046, 1049 (8th Cir. 2002). "Under the advisory guidelines, sentencing judges are only required to find facts by a preponderance of the evidence." *Smart,* 501 F.3d at 867. "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Williams*, 890 F.2d 102, 104 (8th Cir. 1989) (quoting *United States v. Gypsum Co.,* 333 U.S. 364, 395 (1948)).

### 2. The U.S.S.G. § 3C1.1 Enhancement Was Properly Applied.

"We give great deference to a district court's decision to impose an obstruction of justice enhancement, reversing only when the district court's findings are insufficient." *United States v. Cunningham*, 593 F.3d 726, 730 (8th Cir. 2010). The two-level adjustment for obstructing or impeding the administration of justice applies, if: (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction; and (2) the obstructive conduct related to the defendant's offense of conviction. *United States v. Brisbin*, 659 F. App'x. 903, 905 (8th Cir. 2016) (unpublished) (citations omitted).

39

Application Note 4(A) of U.S.S.G. § 3C1.1 lists several examples of covered conduct under the obstruction-of-justice enhancement, which includes threatening, intimidating, or otherwise unlawfully influencing or attempting to influence a witness, directly or indirectly.  U.S.S.G. § 3C1.1 comment n.4(a).  "An attempt to intimidate or threaten a witness, even if unsuccessful, is sufficient to sustain a two-level enhancement for obstruction of justice." *Vaca*, 289 F.3d at 1049.

During the jury trial, the Government introduced into evidence 13 phone calls made by Little Bird.  Tr. Exhs. 7–14, 16–20.  Those phone calls involved Little Bird requesting S.I.R. and S.S.W.'s mother and grandmother to have the girls submit written recantations of their allegations.  Tr. Exhs. 7–14, 16–20.

In discussing Little Bird's objection to the enhancement for obstruction of justice, the district court found that the objections "fly in the face of what the jury found."  ST 11.  Even Little Bird's counsel agreed with that assessment.  ST 11.

In light of that evidence, the district court found Little Bird's phone calls sought to influence S.I.R. and S.S.W.  Such actions amounted to Little Bird taking substantial steps toward obstructing justice.  A substantial step is one that is "necessary to the consummation of the crime and of such a nature that a reasonable observer, viewing it in context could conclude that it was undertaken in accordance with a design to commit the substantive offense. *United States v. Smith*, 665 F.3d

40

951, 956 (8th Cir. 2011). Based on this conduct, the district court appropriately applied the U.S.S.G. § 3C1.1 enhancement.

### 3. The District Court's Imposition of a Life Sentence Was Substantively Reasonable.

If the district court committed no procedural error, then this Court considers "the substantive reasonableness of the sentence imposed, taking into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *United States v. Woodard*, 675 F.3d 1147, 1151 (8th Cir. 2012) (quoting *Feemster*, 572 F.3d at 461) (internal quotation marks omitted)). "It will be the unusual case where [the Court] reverse[s] a district court sentence . . . as substantively unreasonable." *Id*. at 1152 (quoting *Feemster*, 572 F.3d at 464).

Moreover, "[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51. "'A sentence within the Guidelines range is accorded a presumption of substantive reasonableness on appeal.'" *United States v. Garcia*, 946 F.3d 413, 419 (8th Cir., 2019) (quoting *United States v. St. Claire*, 831 F.3d 1039, 1043 (8th Cir. 2016)).

"The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts, and gains insights not conveyed by the record." *Gall,* 552 U.S. at 52. "The sentencing judge has access

41

to, and greater familiarity with, the individual case and the individual defendant before him than [] the appeals court." *Id.* (quoting *Rita v. United States*, 551 U.S. 338, 357-358 (2007)).

Furthermore, the *Gall* court "also noted the district court's 'institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines sentences than appellate courts do.'" *United States v. Burns*, 577 F.3d 887, 894-95 (8th Cir. 2009) (en banc) (quoting *Gall*, 552 U.S. at 51-52) (internal citation omitted). If the district court's justifications for imposing a specific sentence "rest on precisely the kind of defendant-specific determinations that are within the special competence of sentencing courts," no claim can be made that an abuse of discretion has occurred. *Feemster*, 572 F.3d at 464 (quoting *United States v. Gardellini*, 545 F.3d 1089, 1090 (D.C. Cir. 2008)).

The district court considered the relevant factors in 18 U.S.C. § 3553(a), including:

   (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;
   (2)   the need for the sentence imposed—
       (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
       (B)   to afford adequate deterrence to criminal conduct;
       (C)   to protect the public from further crimes of the defendant; and
       (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
   (3)   the kinds of sentences available;
   . . .

42

and

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553(a).

The district court's sentence was amply supported here. The court heard lengthy, detailed testimony about Little Bird's history of sexual abuse of three young girls: W.R.T. (age 14), S.I.R. (age 11), and S.S.W. (age 14). The district court was very familiar with Little Bird, having sentenced him seven times previously. As a result, the court was aware of Little Bird's criminal history, past violent behavior, and inability to comply with conditions of his supervision. ST 21. Little Bird has a lengthy criminal history, including convictions for sex offenses, crimes of violence, and failing to register as a sex offender. PSR ¶¶ 29-36. The district court noted "Little Bird is a very dangerous individual. He has clearly not learned a lesson." ST 22. The district court also discussed the right of a child to be safe in the home that they were living in. ST 20. In short, the district court considered all of the proper factors under 18 U.S.C. § 3553(a) related to Little Bird prior to sentencing him.

Despite the district court's correct application of the Guidelines, Little Bird claims the mandatory minimum sentence of 40 years would be more appropriate. AB 24. The district court's life sentence is within Little Bird's Guidelines range, and appropriate for the crimes he committed.

43

The district court gave proper consideration and assigned appropriate weight to the relevant sentencing factors. The record here is of a court crafting an individualized sentence based on appropriate considerations. It was well within its discretion to sentence Little Bird to spend the rest of his life in prison. This is not the unusual case requiring this Court to upend a substantively unreasonable sentence. The district court did not abuse its discretion, and the sentence should be affirmed.

## CONCLUSION

Based on the foregoing, the Government respectfully requests this Court affirm Little Bird's conviction and sentence.

Dated this 19th day of October, 2022.

ALISON J. RAMSDELL
United States Attorney

*/s/ Jay Miller*
Jay Miller
Assistant United States Attorney
P.O. Box 7240
Pierre, SD 57501
(605) 224-5402

44

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Eighth Circuit Rule 10.6.3, I certify that this brief was prepared using Microsoft Word 2010.

I further certify that I have provided the foregoing brief to the Court via electronic filing of a PDF version of the brief. The PDF file has been scanned for viruses using virus-scanning software approved by the United States Attorney's Office and is virus free.

I further certify that pursuant to Fed. R. App. P. 32(a)(7)(C), the attached brief is proportionately spaced, has a typeface of 14 points or more, and contains 11,203 words.

Dated this 19th day of October, 2022.

ALISON J. RAMSDELL
United States Attorney

*/s/ Jay Miller*
Jay Miller
Assistant United States Attorney
P.O. Box 7240
Pierre, SD 57501
(605) 224-5402

45

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 19, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

ALISON J. RAMSDELL
United States Attorney

*/s/ Jay Miller*
Jay Miller
Assistant United States Attorney
P.O. Box 7240
Pierre, SD 57501
(605) 224-5402

46